UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————— X
Dr. Keith E. Pyne and Enrico Desiata,                :
                                                     :
                    Plaintiffs,              :    1:21-cv-01565-GBD
                                                     :
      -against-                                     :
                                                     :
CKR Law LLP and Jeffrey A. Rinde, Esq.,              :
                                                     :
                    Defendants.              :
                                                     :
                                                     :
                                                     :
———————————————————————— X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO VACATE ENTRY OF DEFAULTS AND TO DISMISS
<u>PROCEEDING IN FAVOR OF ARBITRATION</u>**


                                                                 MOSKOWITZ & BOOK, LLP
                                                                 Peter R. Ginsberg
                                                                 345 Seventh Avenue
                                                                 New York, New York 10001
                                                                 (212) 221-7999
                                                                 pginsberg@mb-llp.com
                                                                 *Attorneys for Plaintiffs*


Dated: New York, New York
        September 29, 2021

Plaintiffs Dr. Keith E. Pyne ("Dr. Pyne") and Enrico Desiata ("Mr. Desiata" and, collectively, "Plaintiffs") submit this Memorandum of Law (hereinafter "Defs' Mem.") in opposition to the motion of Defendants CKR Law LLP ("CKR") and Jeffrey A. Rinde ("Mr. Rinde" and, collectively, "Defendants") to vacate the entry of defaults of each Defendant and to dismiss this action in favor of arbitration. Since counsel has now belatedly appeared on both Defendants' behalf and each Defendant has confirmed and submitted to the jurisdiction of this Court, Plaintiffs do not oppose vacating the entry of defaults so that Plaintiffs can prove their case on the merits without adjudicating the defaults.

This dispute clearly belongs in this Court and not, as Defendants argue, in arbitration. Plaintiffs never agreed to arbitrate this or any other dispute relevant to the pending lawsuit with Defendants, and Defendants' attempt, however cursory, to bind them as a result of agreements that Defendants had with other, unrelated parties both mischaracterizes the law regarding arbitration and ignores Plaintiffs' claims.

## STATEMENT OF FACTS

As alleged in Plaintiffs' Complaint dated February 22, 2021 [ECF Doc. No. 1], Mr. Rinde and CKR executed a plan to defraud Plaintiffs of hundreds of thousands of dollars based upon promises of a return of millions, through fraudulent investment programs requiring an advance fee. In essence, Defendants, knowing their promises were false and that their scheme was designed to steal, enticed Plaintiffs to extend financing for a supposed investment that Defendants promised would yield both a return of their money and a large profit. Defendants, acting both as Plaintiffs' investment advisors and attorneys, obtained hundreds of thousands of dollars from Plaintiffs supposedly to serve as collateral Defendants represented was required in order to process the transactions. On September 3, 204, Dr. Pyne provided via wire and check $200,000 to Defendants,

1

and, on September 4, 2014, Mr. Desiata wired $500,000 to Defendants, for the purpose of funding an investment. Defendants never used the funds for the purpose Defendants represented, the returns promised to Plaintiffs were never made, and Defendants failed and refused to return the funds despite Plaintiffs' appropriate demand of the Defendants.

## ARGUMENT

**I.      COUNSEL BELATEDLY APPEARED ON DEFENDANTS' BEHALF**

On February 22, 2021, Plaintiffs filed a Complaint against Defendants. [ECF Doc. No. 1.] On March 25, 2021, Plaintiffs filed Affidavits of Service evidencing the proper service of the Complaint on each Defendant. [ECF Doc. Nos. 8 and 9.] Defendants failed to answer or otherwise respond to the Complaint. Plaintiffs filed Proposed Clerk's Certificates of Default for each Defendant on July 15, 2021. [ECF Doc. Nos. 15 and 16.] The Clerk's Certificates of Default were executed the same day. [ECF Doc. Nos. 19 and 20.]

Defendants' counsel finally appeared on August 18, 2021, nearly six months after the Complaint was filed, moving to vacate the Clerk's Certificates and to dismiss the Complaint in favor of arbitration. [ECF Doc. No. 21.]

Defendants, having both appeared and confirmed the jurisdiction of this Court, must now answer for their actions. Aware of the disfavor of defaults, Plaintiffs, rather than taking even more time and expending additional resources fighting that battle, are prepared to move forward with adjudicating the merits of the dispute.

**II.     PLAINTIFFS' CLAIMS ARE PROPERLY BEFORE THIS COURT AND DEFENDANTS' MOTION TO COMPEL ARBITRATION SHOULD BE DENIED**

Plaintiffs are not signatories to the arbitration agreement Defendants invoke in an attempt to avoid judicial scrutiny of their actions. Non-signatories to an agreement are not bound by its arbitration clause absent limited circumstances which are not present here. *See, e.g., Coscarelli v.*

*ESquared Hospitality LLC*, 364 F.Supp.3d 207, 217 (S.D.N.Y. 2019) (JMF) (denying defendant's motion to compel arbitration against two entities who were not signatories to an Operating Agreement which contained an arbitration clause even though Plaintiff, who had signed the Operating Agreement, was the sole owner or member of the entities).

Defendants seek to avoid the jurisdiction of this Court by citing to a September 2, 2014 Escrow Agreement ("2014 Escrow Agreement") signed by people and parties with whom Plaintiffs had no involvement and who are not involved in Plaintiffs' dispute with Defendants – Murli D. Datwani ("Mr. Datwani"), on behalf of AIZ Energy SA ("AIZ"), and Gulzhan Namazbaeva ("Mr. Namazbaeva"), on behalf of Paramount Services Ltd. ("Paramount"). [ECF Doc. No. 22-2.][1]  The 2014 Escrow Agreement includes an arbitration clause.  Neither Dr. Pyne nor Mr. Desiata executed or agreed to the Escrow Agreement, nor even were provided a copy of the Escrow Agreement or had any knowledge of its existence.  Nonetheless, Defendants argue that the "text of the arbitration provision in the Escrow Agreement" "constitutes an irrevocably and

---

[1] As a rather curious and unpersuasive secondary avenue for pursuing arbitration, and in a fashion even more cursory than Defendants' discussion of the 2014 Escrow Agreement ("any such disputes are also subject to arbitration pursuant [sic] the arbitration provisions contained in engagement letters signed in connection with those services") Defs' Mem., p. 13, Defendants reference two retainer agreements: (1) an August 31, 2014 letter between Mr. Datwani, in his capacity as Chief Executive Officer of AIZ Energy SA, and CKR Law; and (2) a November 7, 2014 letter between Mr. Desiata, in his capacity as principal of Panasolar Generation SA, and CKR Law.  Neither aids Defendants' efforts.

First, Dr. Pyne is not a signatory to either retainer.

Second, the retention of Defendants was on behalf of AIZ and Panasolar.  Mr. Desiata is suing in this Court in his individual capacity.  See *Kwatinetz v. Mason*, 356 F.Supp.3d 343, 352 (S.D.N.Y. 2018) (JGK) (executing an agreement on behalf of a corporate entity or principal does not bind the signatory to arbitrate a dispute in his individual capacity).  Indeed, Defendants also argue that "neither of the [individual] Plaintiffs were clients of CKR.  Pursuant to the relevant engagement letters, only Panasolar Generation S.A. and AIZ Energy SA were clients of CKR." Defs' Mem. at 4.  Thus, the arbitration provision in the retainer agreements, by Defendants' admission, are not relevant to this dispute.

Third, the alternative dispute resolution provision in the retainer agreements is different than, and unrelated to, the arbitration provision in the 2014 Escrow Agreement.  Indeed, the former calls for an arbitration in New York; the latter, Hong Kong.  The retainer agreements make no reference to the parties to the 2014 Escrow Agreement, make no reference to that agreement at all, and involve unrelated duties of the Defendants. Defs' Mem. at 4.  Thus, their argument that the retainer agreements can force the Plaintiffs to arbitrate this dispute is, at best, disingenuous.

3

enforceable agreement to arbitration under 9 U.S.C. § 2" that somehow binds Plaintiffs. Defs' Mem., p. 12. Defendants are mistaken. Plaintiffs did not consent to be bound by – or even know about – the 2014 Escrow Agreement or arbitration clause. Defendants cannot compel them to arbitrate claims wholly unrelated to the 2014 Escrow Agreement.

The Second Circuit explicitly recognizes that "arbitration is a matter of consent, not coercion." *Ross v. Am. Express. Co.*, 547 F.3d 137, 143 (2d Cir. 2008) (reversing district court decision compelling arbitration with non-signatory) (citations and internal quotation marks omitted). "Persons are generally entitled to have their dispute settled by the ruling of a court of law. It is essentially only by making a commitment to arbitrate that one gives up the right of access to a court of law in favor of arbitration." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358 (2d Cir. 2008) (affirming denial of non-signatory's motion to compel arbitration) (citation omitted); *see also Ross*, 547 F.3d at 143 (reversing district court's order compelling arbitration); *Laumann v. Nat'l Hockey League*, 989 F. Supp. 2d 329, 335 (S.D.N.Y. 2013) (SAS) ("The parties' intentions and expectations govern which issues they have agreed to arbitrate, as well as with *whom* they have agreed to arbitrate") (emphasis in original).

While public policy under appropriate circumstances favors resolution of disputes by arbitration, *see TNS Holdings v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 703 N.E.2d 749 (1998), non-signatories generally are not subject to arbitration agreements. As the Supreme Court explained in *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." S*ee also Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (arbitration agreements 'must not be so broadly construed as to encompass claims and parties that were not intended by the original contract"); *Belzberg v. Verus Investments*

4

*Holdings Inc.*, 21 N.Y.3d 626 (2013) (holding that an investor, as a non-signatory, was not required to arbitrate as he received no direct benefit from the arbitration agreement). The facts in *Belzberg* are illuminating. In that case, an investment brokerage commenced arbitration with a holding company seeking to enforce payment of unpaid tax withholdings. The holding company brought third-party claims seeking to compel the investor to arbitrate in relation to payment on his share of those withholdings. The *Belzberg* Court refused to force the investor to participate in arbitration, explaining that because the investor was not a signatory to the arbitration agreement, he did not receive a direct benefit from the arbitration agreement and thus could not be compelled to relinquish his right to seek redress in court. Similarly, here, Dr. Pyne and Mr. Desiata were not signatories to the 2014 Escrow Agreement nor did they receive any benefit from the agreement.

The only signatories to the Escrow Agreement are Mr. Datwani, acting on behalf of AIZ, Mr. Namazbaeva, acting on behalf of Paramount, and Mr. Rinde, acting on behalf of CKR. Plaintiffs did not sign the Escrow Agreement, are not named in the Escrow Agreement, and there is no basis to conclude that Plaintiffs ever saw or knew about it, and certainly did not benefit from the 2014 Escrow Agreement.

Plaintiffs assert four claims for relief against Defendants: (1) Breach of Contract; (2) Breach of Fiduciary Duty; (3) Fraud; and (4) Unjust Enrichment. Plaintiffs' Breach of Contract claim is based on Defendants' failure to perform their obligations to structure a trading platform for Plaintiffs' investments. Plaintiffs' Breach of Fiduciary Duty claim is based on Defendants' failure to protect Plaintiffs' financial interests and investments, and to secure their funds and distribute them in a timely manner. Plaintiffs' Fraud claim is based on Defendants' presentation to Plaintiffs of a business opportunity which Defendants knew could not and would not be profitable, and, in fact, was not a bona fide investment opportunity of any sort. Plaintiffs' Unjust

Enrichment claim is based on Defendants' unlawful retention of the funds transferred to them and Defendants' failure to transfer to Plaintiffs any profits or distributions due to Plaintiffs stemming from their investments. Plaintiffs' claims are independent of AIZ, Paramount, and the Escrow Agreement involving those parties and Defendants.

In such circumstances, where "the parties dispute not the scope of an arbitration clause but whether an obligation to arbitrate exists, the presumption in favor of arbitration does not apply." *Applied Energetics, Inc. v. NewOak Capital Mkts.*, 645 F.3d 522, 526 (2d Cir. 2011); *see Kwatinetz*, 356 F.Supp.3d at 352 (parties who signed an agreement with an arbitration clause only on behalf of a principal and not in their individual capacities and who did not receive direct benefits from the agreement cannot be forced to arbitrate); *see also Norcast S.A.R..L. v. Castle Harlan, Inc.*, 2014 WL 43492, at *4, 6 (S.D.N.Y. Jan. 6, 2014) (PAC) (denying defendant's motion to compel arbitration where plaintiff did not sign the arbitration agreement and defendant's attempt to argue incorporation by reference or equitable estoppel failed where plaintiff's claims did "not rely on the terms of the Confidentiality Agreement [which contained the arbitration language] or seek to enforce rights thereunder"). In *Norcast*, the Court found that plaintiff had "not sought to avail itself of any 'direct benefits' under the Confidentiality Agreement, and therefore it [was] not estopped from denying the applicability of the arbitration clause therein." Similarly here, none of Plaintiffs' claims reflects or otherwise involves an attempt to avail themselves of the 2014 Escrow Agreement, and thus Plaintiffs cannot be compelled to arbitrate such claims as a result of arbitration language in that Escrow Agreement.

As a result, the pivotal inquiry here is whether the parties agreed to arbitrate a dispute: "[W]hen deciding a motion to compel arbitration, a court must first address 'whether the parties agreed to arbitrate.'" *Sabilia v. Richmond*, 2012 WL 213656, at *3 (S.D.N.Y. Jan. 24, 2012) (JPO) (denying

motion to compel arbitration where non-signatory defendant did not agree to arbitration) (quoting *Rodriguez v. Four Seasons Hotels, Ltd.*, 2009 WL 2001328, at *3 (S.D.N.Y. July 10, 2009) (DLC)).  Even Defendants' own case law, *Daly v. Citigroup Inc.*, 939 F.3d 415, 421-22 (2d Cir. 2019), cited on page 12 of their brief, supports this proposition that whether the parties agreed to arbitrate is the first step of the analysis ("In reviewing a motion to compel arbitration, we must therefore determine: (1) 'whether the parties agreed to arbitrate'…").  939 F.3d at 421.  Yet, Defendants skip over this analysis.

If there is no agreement to arbitrate, the party seeking to prevent litigation must show another basis to compel arbitration.  *See Ross*, 547 F.3d at 142-43.  Defendants ignore this analysis as well.  Indeed, Defendants simply base their motion to compel arbitration on the suggestion, stated without analysis, that the "text of the arbitration provision in the Escrow Agreement" … "constitutes an irrevocably and enforceable agreement to arbitration under 9 U.S.C. § 2."  Defs' Mem., p. 12.

The Second Circuit recognizes five bases under which a court may bind a non-signatory to an arbitration agreement: "[i] incorporation by reference; [ii] assumption; [iii] agency; [iv] veil-piercing/alter ego; and [v] estoppel." *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995).  As stated, Defendants do not point to any of the Second Circuit's five bases for compelling non-signatories to submit to arbitration.  In fact, none apply.

The first basis, "incorporation by reference," is inapplicable here.  "Contracts may incorporate other documents by reference where they describe *the other documents* 'in such clear and unambiguous terms' that the identity of the other documents 'can be ascertained beyond reasonable doubt.'" *Pool Deals, LLC v. United Parcel Service, Inc.*, 454 F.Supp.3d 208, 213-14 (W.D.N.Y. 2020) (JLS) (internal citation omitted) (emphasis added).  There exists no secondary

7

set of documents involving the parties to this litigation which would even arguably have referenced or otherwise bound by incorporation Dr. Pyne and Mr. Desiata to participate in the arbitration provision in the 2014 Escrow Agreement

Second, with respect to the "assumption" basis for compelling arbitration, "[i]n the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate." *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 777. Here, as in *Thomson-CSF*, Plaintiffs' subsequent conduct does not manifest an intent to be obligated to arbitrate. In fact, their conduct manifests an intent to pursue their claims in this Court. As Dr. Pyne and Mr. Desiata have not manifested "a clear intent to arbitrate," they are not bound to do so under an assumption theory. *Id.*

With respect to the third basis, "[a]gency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." RESTATEMENT (SECOND) OF AGENCY § 1 (1958). Defendants offer no facts to support an argument that Plaintiffs consented to control by any of the signatories to the Escrow Agreement. Therefore, Plaintiffs are not bound by any agreement to arbitrate on an agency theory.

The fourth basis, "veil piercing/alter ego," also is inapplicable here. "Determining that veil-piercing is appropriate is a 'fact specific' inquiry dependent upon many factors, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

8

*Mag Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001).  As the factors indicate, this theory involves having a relationship with a corporate entity that is a party to the arbitration agreement.  No such relationship exists here with any of the parties to the 2014 Escrow Agreement.

Finally, attempting to base imposition of the 2014 Escrow Agreement arbitration clause upon an estoppel theory would be equally unavailing.  "Under the estoppel theory, a company 'knowingly exploiting [an] agreement [with an arbitration clause can be] estopped from avoiding arbitration despite having never signed the agreement.'"  *Id.* at 778.  Guided by '[o]rdinary principles of contract and agency,' we have concluded that where a company 'knowingly accepted the benefits' of an agreement with an arbitration clause, even without signing the agreement, that company may be bound by the arbitration clause."  *Mag Portfolio*, 268 F.3d at 61.

For an estoppel basis to be applicable, the "benefits must be direct—which is to say, flowing directly from the agreement..." *Id.*  Here, Plaintiffs clearly did not assume or gain any benefit directly from the Escrow Agreement.

Furthermore, as with the veil piercing basis of applying an arbitration agreement to a non-party, the Second Circuit generally only applies the estoppel theory to a party that "has had some sort of corporate relationship to a signatory party; that is, this Court has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities."  *Doe v. Trump Corporation*, 6 F.4th 400, 413 (2d Cir. 2021) (defendants not entitled to compel plaintiffs to arbitrate their dispute based on principles of equitable estoppel where "[t]here was no corporate relationship between the defendants and ACN of which the plaintiffs had knowledge, the defendants do not own or control ACN, and the defendants are not named in the IBO agreements

between ACN and the plaintiffs"). Similarly, here, there is no corporate relationship, no ownership, and the Plaintiffs are not named or referenced in the Escrow Agreement.

Plaintiffs cannot be forced to relinquish their right to assert their claims and pursue their remedies in this Court. Plaintiffs are not signatories to the agreement and none of the bases apply for forcing arbitration on a non-signatory to an agreement with an alternative dispute resolution provision. Defendants cannot force others' agreements upon Plaintiffs while trying to avoid their own obligations. Defendants' motion to compel arbitration should be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied, and the instant matter be allowed to proceed in this Court.

Dated:   New York, New York
         September 29, 2021

**MOSKOWITZ & BOOK, LLP**

By: */s/ Peter R. Ginsberg*
Peter R. Ginsberg
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: (212) 221-7999
*Attorneys for Plaintiffs*