UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. KEITH E. PYNE and ENRICO DESIATA,<br><br>              Plaintiffs,<br><br>       -against-<br><br>CKR LAW LLP and JEFFREY A. RINDE,<br><br>              Defendants. | Civil Action No.: 1:21-cv-01565-GBD |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO VACATE ENTRY OF DEFAULTS AND TO DISMISS PROCEEDING IN FAVOR OF ARBITRATION**

FELICELLO LAW P.C.
366 Madison Avenue, 3rd Floor
New York, New York 10017
Tel. (212) 517-0875
*Attorneys for Defendants CKR Law LLP and Jeffrey A. Rinde*

Of counsel:   Michael James Maloney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

I.         Plaintiffs Have Consented to the Vacatur of the Defaults ...................... 2

II.        Plaintiffs' Are Required to Submit to Arbitration ................................. 3

    A.       Plaintiffs are Estopped From Avoiding the Arbitration Provisions Because They Received a Direct Benefit From the Contract Requiring Arbitration .......................... 3

    B.       Plaintiffs' Words and Conduct Indicate That They Assumed the Obligation to Arbitrate ............................................................................................................................ 7

    a.       As the Alter Egos of the Signatories to the Agreements, Plaintiffs are Bound by the Arbitration Provisions ............................................................................................. 10

    C.       All Other Issues of Arbitrability Must be Submitted to the Arbitrator ........................ 10

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Alcoa Corp. v. Anheuser-Busch Inbev SA/NV*, No. 20-cv-3834 (PKC), 2020 U.S. Dist. LEXIS 160416 (S.D.N.Y. Sep. 2, 2020) ................................................................................................ 7

*Blasters, Drillrunners & Miners Union Local 29 v. Trocom Constr. Corp.*, No. 10-CV-4777(KAM)(MDG), 2011 U.S. Dist. LEXIS 154497 (E.D.N.Y. Aug. 15, 2011) ....................... 2

*Byrnes v. Yeats Constr. Mgmt., Inc.*, No. 12 CV 05355, 2017 U.S. Dist. LEXIS 147294 (S.D.N.Y. Sept. 11, 2017) ................................................................................................................ 3

*Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58 (2d Cir. 2005) .......................................................... 3

*Gunnells v. Teutul,* 469 F. Supp. 3d 100 (S.D.N.Y. 2020) ................................................................ 3

*Jacobs v. USA Track & Field*, 374 F.3d 85 (2d Cir. 2004) ............................................................... 3

*Jennings v. Hunt Cos.*, 367 F. Supp. 3d 66 (S.D.N.Y. 2019) ............................................................ 8

*Peoples v. Fisher*, 299 F.R.D. 56 (W.D.N.Y. 2014) ......................................................................... 2

*Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508 (2d Cir. 2001) ............................................................. 2

*Robinson Brog Leinwand Greene Genovese & Gluck P.C. v. John M. O'Quinn & Assocs.*, 523 F. App'x 761 (2d Cir. 2013) ............................................................................................. 5, 6, 7

*Rowland v. Giftcertificates.com, Inc.*, 195 F. Supp. 2d 509 (S.D.N.Y. 2002) .................. 2

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995) ............................ 3, 7, 10

*World Omni Fin. Corp. v. ACE Capital Re Inc.*, 64 F. App'x 809 (2d Cir. 2003) ....................... 3, 5

**Statutes**

9 U.S.C. § 4 ....................................................................................................................................... 3

Defendants CKR Law LLP ("CKR") and Jeffrey A. Rinde ("Rinde" and together with CKR, the "Defendants") submit this reply memorandum in further support of their motion to vacate the entries of default and to dismiss this action in favor of arbitration. Unless otherwise stated, all capitalized terms have the definitions assigned to them in Defendants' Memo of Law in Support.

## PRELIMINARY STATEMENT

Plaintiffs have now consented to the vacating of the defaults entered in this action. The only issue that remains in dispute is whether this action should be dismissed on the ground that Plaintiffs are obligated to submit their claims to arbitration. There is no dispute that the Initial Engagement Letter, Follow-Up Engagement Letter and Escrow Agreement all contain arbitration provisions. Plaintiffs argue that these arbitration provisions do not apply to them even as they demand relief based on the same agreements merely because Plaintiffs did not sign the agreements themselves.

Plaintiffs' arguments fail for the following reasons: First, Plaintiffs allege in the complaint that they were direct beneficiaries of the legal advice that Defendants agreed to provide in the engagement letters. As recipients of a direct benefit of the engagement letters, Plaintiffs are, under Second Circuit precedent, estopped from denying the obligation to arbitrate in accordance with the arbitration provision in the engagement letters. Likewise, Plaintiffs also allege that they were direct beneficiaries of the Escrow Agreement and, on that basis, are estopped from denying the obligation to arbitrate under that agreement.

Second, the totality of Plaintiffs' words and conduct demonstrate that they

1

assumed the rights and obligations of the engagement letters and Escrow Agreement. Although AIZ was the signatory to the Initial Engagement Letter and the Escrow Agreement, and Panasolar the signatory of the Follow-Up Engagement letter, Plaintiffs' allegations in the Complaint make clear that they intended to step into the shoes of AIZ and Panasolar for purposes of receiving both the legal advice from Defendants and the trading proceeds expected to result from the escrow. Thus, by assuming the rights and obligations of the signatories, Plaintiffs also assumed the obligation to arbitrate pursuant to the terms of the relevant agreements.

Finally, the signatories to the engagement letters and Escrow Agreement, AIZ and Panasolar, were mere alter egos of Plaintiffs and, therefore, Plaintiffs are bound to the same terms that bind AIZ and Panasolar.

Plaintiffs' buyer's remorse after entering into a financial transaction with Datwani, Straightline, Ault Capital, Anderson and the other nonparties mentioned in the Complaint is no grounds for avoiding their obligation to arbitrate.

## ARGUMENT

### I. Plaintiffs Have Consented to the Vacatur of the Defaults

In their papers filed in opposition to this motion, Plaintiffs state that they "do not oppose vacating the entry of the defaults. . . ." Memo of Law in Opp. (ECF 29) at 1. Given Plaintiffs' consent to the vacating of the defaults, and the other facts submitted by Defendants in support of this motion, Memo of Law in Support (ECF 24) at 5-11, the Court should issue an order vacating the defaults. *Peoples v. Fisher*, 299 F.R.D. 56, 58 (W.D.N.Y. 2014) (citing *Powerserve Int'l, Inc. v. Lavi,* 239 F.3d 508,

514 (2d Cir. 2001)); *Blasters, Drillrunners & Miners Union Local 29 v. Trocom Constr. Corp.*, No. 10-CV-4777(KAM)(MDG), 2011 U.S. Dist. LEXIS 154497, at *5 (E.D.N.Y. Aug. 15, 2011); *Rowland v. Giftcertificates.com, Inc.*, 195 F. Supp. 2d 509, 512 (S.D.N.Y. 2002); *Byrnes v. Yeats Constr. Mgmt., Inc.*, No. 12 CV 05355, 2017 U.S. Dist. LEXIS 147294, at *7 (S.D.N.Y. Sept. 11, 2017); *Gunnells v. Teutul,* 469 F. Supp. 3d 100 (S.D.N.Y. 2020).

## II.     Plaintiffs' Are Required to Submit to Arbitration

Plaintiffs do not dispute this Court's jurisdiction over them or the validity of the arbitration provision in the engagement letters and the Escrow Agreement. Therefore, the only issue for the Court to decide is whether Plaintiffs can avoid their obligation to arbitrate their claims on the sole basis that they did not sign the relevant agreements. *See Jacobs v. USA Track & Field*, 374 F.3d 85, 88 (2d Cir. 2004) (limiting the Court's role to gatekeeper where the Federal Arbitration Act is involved).

The absence of Plaintiffs' signatures on the relevant agreements, alone, does not relieve them from the mandatory arbitration provisions. A nonsignatory may be bound to an arbitration provision if any one of five grounds exist: "(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter-ego, and (5) estoppel" *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 71 (2d Cir. 2005) (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). In this case, Plaintiffs are bound by the arbitration provision on the grounds of estoppel, assumption, and alter-ego.

### A.     Plaintiffs are Estopped From Avoiding the Arbitration Provisions Because They Received a Direct Benefit From the Contracts Requiring Arbitration

Where, as here, Plaintiffs seek to receive direct benefits from a contract

containing an arbitration provision, they are "estopped from denying its obligation to arbitrate." *World Omni Fin. Corp. v. ACE Capital Re Inc.*, 64 F. App'x 809, 812 (2d Cir. 2003) (citations omitted). In *World Omni*, the plaintiff, a lease financing company, had formed a shell company for the purpose of purchasing insurance coverage from an overseas insurer. The shell company agreed to indemnify the lease financing company against certain losses and was itself insured against the same losses by the insurer. The lease financing company had paid premiums due under the insurers' policy by passing the payments through the shell company. When the insurer later denied a claim, the lease financing company sued the insurer for breach of contract. The insurer moved to compel arbitration of the lease financing company's claim because the insurer's contract with the shell company contained an arbitration provision. The Second Circuit recognized that the lease financing company was seeking recovery under both its contract with the shell company and also the contract between the shell company and the insurer that contained the arbitration provision. The Second Circuit found these facts sufficient to estop the lease financing company from denying the obligation to arbitrate the claims. *See id.*

This case presents facts that are on all fours with the Second Circuit's ruling in *World Omni*. Plaintiffs here assert a claim for breach of the Initial Engagement Letter between AIZ and CKR. Plaintiffs allege in paragraph 48 of the Complaint that "[p]ursuant to the Initial Engagement Letter, Rinde and CKR agreed to represent AIZ *on Plaintiffs' behalf* . . . in negotiating the lease and monetization of the SBLC, which would be used to fund Panasolar." (emphasis added). In paragraph 33 of the

4

Complaint, Plaintiffs allege "*Desiata, on behalf of himself and Dr. Pyne*, entered into a contract ("Follow-Up Engagement Letter") to continue Defendants' legal services." (emphasis added). Plaintiffs allege numerous times throughout the Complaint that the legal services rendered by Defendants were for the direct benefit of Plaintiffs, individually. Complaint ¶¶ 33, 48, 49, 51, 52, 55, 56, 64, 65, 71, 72.

Thus, AIZ was merely a shell company and, according to Plaintiffs, they are the individuals who were entitled to the benefits of Defendants' legal advice and services described in the engagement letters. The Initial Engagement Letter and Follow-Up Engagement Letter were contracts to provide legal services in exchange for fees and, therefore, the legal services were a direct benefit of those contracts. Because the contract also includes an arbitration provision, the Plaintiffs are estopped from denying the obligation to arbitrate their claims. *See World Omni Fin. Corp. v. ACE Capital Re Inc.*, 64 F. App'x 809, 812 (2d Cir. 2003); *Robinson Brog Leinwand Greene Genovese & Gluck P.C. v. John M. O'Quinn & Assocs.*, 523 F. App'x 761, 763 (2d Cir. 2013).

Plaintiffs' reliance on *Belzberg v. Verus Investments Holdings Inc.*, 21 N.Y.3d 626 (2013), is inapposite. In *Belzberg*, the Court of Appeals found that non-signatory Belzberg could not be compelled to arbitrate third-party claims because he had not received a direct benefit from the brokerage agreement between the third-party plaintiff, a fund, and an investment bank. Belzberg had not bargained with the fund for brokerage services and, therefore, Belzberg received only indirect benefits from the brokerage agreement between the fund and the bank.

5

The situation in this case is entirely different from that in *Belzberg* because here Plaintiffs' claims all rise from obligations established by the very documents containing the arbitration provisions. The Complaint makes clear that Plaintiffs sought and received a direct benefit of the engagement letters – i.e., the legal advice and services of Defendants. Plaintiffs also sought and received a direct benefit of the Escrow Agreement, *i.e.*, the trading agreement alleged in the Complaint. Plaintiffs claim relief that only a signatory to the contracts would be entitled to claim and, therefore, Plaintiffs are estopped from avoiding the obligation to arbitrate that would apply to a signatory.

The Second Circuits' ruling in *Robinson Brog* is controlling. In *Robinson Brog*, a law firm sued its co-counsel for a share of legal fees earned in connection with the representation of a client. The co-counsel firm moved to compel the plaintiff to arbitrate pursuant to an arbitration provision in an agreement between the co-counsel and the ultimate client. The Second Circuit found that the plaintiff could recover "only by virtue" of the agreement that contained the arbitration provision.

Similarly, here Plaintiffs' claims – breach of contract, breach of fiduciary duty, fraud and unjust enrichment – all stem from the legal services agreed to be provided under the engagement letter with Defendants. Plaintiffs can recover only by virtue of the engagement letter and, therefore, they are estopped from denying their obligation to arbitrate pursuant to the arbitration provisions in the engagement letter. *See Robinson Brog Leinwand Greene Genovese & Gluck P.C. v. John M. O'Quinn & Assocs.*, 523 F. App'x 761, 763 (2d Cir. 2013).

6

Likewise, Plaintiffs' allegations center on them being direct beneficiaries of the Escrow Agreement. Plaintiffs allege that they were entitled to proceeds from a trading agreement between AIZ and Paramount. Complaint ¶¶ 34, 35, 40. The "trading agreement" refers to the PCA alleged in paragraph 24 of the Complaint and, according to Plaintiffs, the Escrow Agreement was an essential part of the trading agreement transaction because the escrow was an integral part of the transaction. "As part of the transaction, the parties entered into an escrow agreement whereby Plaintiffs' investments would be transferred into an escrow account controlled by CKR. . . ." Complaint ¶ 26. Thus, for purposes of the issue of arbitrability, the Escrow Agreement was an integrated part of the overall trading agreement, *Chem. Bank v. Meltzer*, 93 N.Y.2d 296, 304, 690 N.Y.S.2d 489, 493, 712 N.E.2d 656, 661 (1999), and Plaintiffs' alleged damages flow from the direct benefits of this integrated transaction, *i.e.*, the investment proceeds alleged in the Complaint to be part of the transaction. As such, Plaintiffs are claiming a direct benefit from this transaction and are estopped from denying their obligate to arbitrate pursuant to the terms of the Escrow Agreement. *See Robinson Brog Leinwand Greene Genovese & Gluck P.C. v. John M. O'Quinn & Assocs.*, 523 F. App'x 761, 763 (2d Cir. 2013).[1]

### B.   Plaintiffs' Words and Conduct Indicate That They Assumed the Obligation to Arbitrate

By assuming the benefits of the relevant agreements containing the arbitration provisions, Plaintiffs also assumed the obligation to arbitrate. *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995) ("In the absence of a signature,

---

[1] *See also CKR Law LLP v. Anderson Invs. Int'l, LLC*, 2021 U.S. Dist. LEXIS 114647 (S.D.N.Y. June 21, 2021).

7

a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate"). *See also Alcoa Corp. v. Anheuser-Busch Inbev SA/NV*, No. 20-cv-3834 (PKC), 2020 U.S. Dist. LEXIS 160416, at *12-14 (S.D.N.Y. Sep. 2, 2020) (compelling arbitration based on assumption of a contract). An intent to be bound by a contract can be inferred "based on the totality of a party's expressed words and deeds." *Jennings v. Hunt Cos.*, 367 F. Supp. 3d 66, 71 (S.D.N.Y. 2019) (internal quotations omitted).

Here, the totality of Plaintiffs' expressed words and deeds necessarily give rise to the inference that Plaintiffs have assumed the obligations of the engagement letters. In the Complaint, Plaintiffs allege that with respect to the Initial Engagement Letter, "CKR agreed to represent AIZ on Plaintiffs' behalf. . . ." Complaint ¶ 71. According to Plaintiffs, in the Follow-Up Engagement Letter, Defendants "agreed to represent the legal and financial interests of Plaintiffs. . . ." Complaint ¶ 72. "On November 7, 2014, Desiata, on behalf of himself and Dr. Pyne, entered into a contract ("Follow-Up Engagement Letter") to continue Defendants' legal services. . . ." Complaint ¶ 33. Plaintiffs contend that they – individually – were entitled to the legal services described in the engagement letters.

Plaintiff assumption of the agreements is stated plainly in paragraph 52 of the Complaint, where Plaintiff refer to the signatories as their "predecessor in interest under the Initial Engagement Letter and Follow-Up Engagement letter." Accordingly, Plaintiffs, as the successors to the signatories to these engagement letters, must be bound by the arbitration provisions in the engagement letters.

8

Plaintiffs also have expressed the intent to assume the obligations under the Escrow Agreement. In the Complaint, Plaintiffs allege that "Mark Datwani . . . [was] a business associate" of Plaintiff Desiata. P19. Plaintiffs allege that "Datwani . . . convinced Desiata to invest $500,000, and, in turn, Dr. Pyne to invest an additional $200,000" in the transaction. Complaint ¶ 20. Datwani also "represented to Plaintiffs that Rinde had negotiated[] a trading agreement between AIZ Energy SA ('AIZ') and Paramount Services Ltd. ('Paramount'). . . . ." Complaint ¶ 25. "As part of the transaction, the parties entered into an escrow agreement whereby Plaintiffs' investments would be transferred into an escrow account controlled by CKR. . . ." Complaint ¶ 26. These allegations, and the allegations in paragraphs 27 and 28 of the Complaint, demonstrate that Plaintiffs knew that the Escrow Agreement existed, that the parties to the Escrow Agreement were AIZ, Paramount and CKR, and that the funds Plaintiffs expected to invest would be used to satisfy AIZ's commitments under the Escrow Agreement. Moreover, Plaintiffs knew all of the foregoing before they invested the funds. Complaint ¶¶ 27-29. When Plaintiffs wired their funds, they did so for the express purpose of funding the transaction that is the subject of the Escrow Agreement. Complaint ¶ 29. "Desiata intended to use his distributions to build Panasolar's solar plant and grow the business. Dr. Pyne intended to use his distributions to invest in medical hemp research, an industry which was still in its early stages." Complaint ¶ 34.

Thus, Plaintiffs were stepping into the shoes of AIZ for purposes of funding the escrow and receiving the proceeds of the trading agreement. These "expressed words

and deeds" demonstrated the Plaintiffs' intent to assume the rights and obligations under the agreements, including the obligation to arbitration pursuant to the terms of the Escrow Agreement.

### a. As the Alter Egos of the Signatories to the Agreements, Plaintiffs are Bound by the Arbitration Provisions

Plaintiffs are bound to the arbitration under the theory of alter ego. *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995). As Plaintiffs' allegations make clear, they knew that although AIZ was the signatory to the Escrow Agreement, Plaintiffs intended to use their own funds to meet AIZ's obligation to fund the escrow and Plaintiffs intended to use the proceeds of the financial transaction to fund Plaintiffs' own invest schemes (*e.g.*, "Desiata intended to use his distributions to build Panasolar's solar plant and grow the business. Dr. Pyne intended to use his distributions to invest in medical hemp research, an industry which was still in its early stages." Complaint ¶ 34). Accordingly, AIZ was merely an alter ego for Plaintiffs.

### C. All Other Issues of Arbitrability Must be Submitted to the Arbitrator

Here, the engagement letters and the Escrow Agreement include the type of broad language that the Second Circuit has found sufficient to give rise to a presumption of arbitrability of even collateral matters. *See ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 34 (2d Cir. 2002). Thus, all other issues should be left for the arbitrator.

## CONCLUSION

For the foregoing reasons, the Court should set aside the defaults entered against CKR and Rinde on July 15, 2021 and compel Plaintiffs to submit this dispute to arbitration.

Dated: New York, New York
      October 29, 2021

Respectfully submitted,

FELICELLO LAW P.C.

By: _/s/ Michael James Maloney_
    Michael James Maloney
366 Madison Avenue, 3rd Floor
New York, New York 10017
Tel. (212) 517-0875
mmaloney@felicellolaw.com
*Attorneys for Defendants CKR Law LLP and Jeffrey A. Rinde*